WILLIAM A. FURBER

*v.*

BENJAMIN V. PAGE et al.

*Filed at Ottawa October 31, 1892.*

1. PARTNERSHIP—*burden of proof.* The burden of proving the existence of a partnership devolves upon the party alleging the same, when it is denied.

2. SAME—*whether partners or tenants in common.* An agreement between two persons to purchase a tract of land and erect buildings thereon for their joint benefit does not necessarily give rise to the presumption that they are partners. As such transaction is equally consistent with the relation of tenants in common, the parties thereto may or may not be held to be partners, depending, as between themselves, upon their intention, legally ascertained.

3. Where land is bought by two persons, taking the title in the name of one, who is to advance the entire purchase money, the other to devote his services as an architect in the erection of buildings thereon, and the first to borrow money on the property with which to pay the price and cost of the buildings, and it is agreed that the grantee shall hold the title for them jointly until the buildings are completed, and then convey the undivided half thereof to the other, subject to the in-

cumbrance thereon, this, in the absence of proof of any other or inconsistent intention, will fail to show the existence of a partnership as to the enterprise.

4. RESULTING TRUST — *when it arises.* It is well established that no parol agreement, and no payments, whenever made, will create a resulting trust, unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself. But while a parol agreement will not aid or extend the trust, it will not prevent one from resulting, if the facts are present that produce the implication of law from which it arises.

5. SAME — *created by payment by one — and title in another.* Where the trust is claimed to have resulted from the payment by one and the taking of the title in another, it must be clearly shown that the money of the *cestui que trust* entered into the consideration for the purchase, and if the trust is asserted to attach to less than the whole, it must appear that the sum contributed was for some aliquot share or part of the estate. General contribution toward the purchase is not sufficient.

6. While the trust results from the acts of the parties, and not by contract, it is proper to say that it arises from the acts, accompanied by proof of the intention in making the payment, which may be shown by proof of the agreement under which it is made.

7. The principle upon which the rule is based is, that the beneficial estate follows the consideration and attaches to the party from whom it comes, and is founded on the natural presumption that he who supplies the purchase money intends the purchase for his own benefit and not for a stranger, and that the conveyance is taken as a matter of convenience to the purchaser. It attaches because the party claiming the beneficial interest has actually paid the consideration from his own funds, or from funds for which he is absolutely liable.

8. SAME — *not created by contract.* A and B bought real estate, taking the title in the name of B, who was to pay the purchase money and the cost of erecting buildings thereon, and A was to devote his services as architect in superintending the work. B raised all the money by his own mortgage upon the property : *Held,* that no resulting trust was created in favor of A as to one-half of the land or any other part thereof, as none of his money was used by B. Such case is clearly distinguishable from that class of cases where the lender of money for the purchase of land takes title in his own name as security for its repayment. In such cases the money is treated as the money of the borrower.

9. SAME — *degree of proof to establish.* And the rule is uniform that in all cases where a resulting trust is sought to be established and enforced, the trust must be clearly proved, and the facts set forth out of which the trust is claimed to arise must be proved with clearness and certainty.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. DOOLITTLE, McKEY & TOLMAN, for the appellant:

The record shows a valid contract of partnership between appellant and Page in completing the purchase of this land under his contract, and in building upon it, and in the rents and profits. 3 Kent's Com. 25, 38; Lindley on Partnership, 568, 573; *Sigourney* v. *Munn*, 7 Conn. 11.

Independent of the contract of partnership, a resulting trust arises whenever the whole or any portion of the purchase money or consideration of land is furnished by one person and the title taken by another. *Perry* v. *McHenry*, 13 Ill. 227; *Seaman* v. *Cook*, 14 id. 505; *Smith* v. *Smith*, 85 id. 189; *Wallace* v. *Carpenter*, id. 590; *Mason* v. *Showalter*, id. 133; 4 Kent's Com. 306.

And so even though he does not furnish an aliquot portion. *Fleming* v. *McHale*, 47 Ill. 282.

The fact that an oral agreement was made in connection with a resulting trust does not change its nature, so as to make it void under the statute. Even though recognized or defined by parol, there is still a resulting trust. *Smith* v. *Smith*, 85 Ill. 182; *Williams* v. *Brown*, 14 id. 202; *Mathis* v. *Stufflebeam*, 94 id. 485; *Wallace* v. *Carpenter*, 85 id. 590; Willard's Eq. 600.

The Statute of Frauds does not affect a resulting trust. It may be shown by parol. Rev. Stat. sec. 9, chap. 59; *Nicholas* v. *Thornton*, 16 Ill. 113; *Emmons* v. *Moore*, 85 id. 304; *Kane County* v. *Herrington*, 50 id. 237.

A resulting trust is a continuing trust, and no statute of limitations runs against it. *King* v. *Hamilton*, 16 Ill. 195; Angell on Limitations, 161, 162.

*Laches* will not be declared where the delay is explained so so as to lay hold upon the conscience of the chancellor. *Harris* v. *McIntyre*, 118 Ill. 289.

Messrs. Runnells & Burry, for the appellees:

This action is barred by the Statute of Frauds.   A partnership agreement can not be shown by parol, for the purpose of showing an equitable interest in land.   *Dale* v. *Hamilton*, 5 Hare, 369; *Smith* v. *Burnham*, 3 Sumn. 435; *In re Warner*, 2 Ware, 322; *Bird* v. *Morrison*, 12 Wis. 138; *Van Trotha* v. *Bamberger*, 15 Col. 1; *Everhart's Appeal*, 106 Pa. St. 349; *Raub* v. *Smith*, 61 Mich. 543; *Biggins* v. *Biggins*, 133 Ill. 218; *McGinnis* v. *Fernandes*, 126 id. 232; *Howland* v. *Blake*, 97 U. S. 624.

The evidence if competent, fails to establish a resulting trust in favor of the complainant.   When a resulting trust arises, see *Alexander* v. *Tams*, 13 Ill. 225; *Perry* v. *McHenry*, id. 234; *Walter* v. *Klock*, 55 id. 362; *Latham* v. *Henderson*, 47 id. 185; Perry on Trusts, sec. 133.

There is no evidence in this case to establish a partnership agreement.   Lindley on Partnership, 52, notes; *Gregory* v. *Martin*, 78 Ill. 38; *Sikes* v. *Work*, 6 Gray, 433; *Schaefer* v. *Fowler*, 111 Pa. St. 451; *Alkire* v. *Kahle*, 123 Ill. 499; Collyer on Partnership, (6th ed.) 8.

Mr. Justice Shope delivered the opinion of the Court:

Counsel for appellant disavow an intention to insist upon a reversal of the decree upon the ground that the court below erred in not decreeing the specific performance of a parol contract, merely, for the conveyance of the land in controversy. They say: "Counsel (for appellee) begin their brief by begging the whole question.   They state that this bill is filed to enforce an oral contract.   *   *   *   We must, of course, agree with them that a court of chancery has no power to enforce the claims of Furber, however equitable they may be, if based wholly upon a verbal agreement."   With the law thus frankly and correctly stated we are relieved from the necessity of restating the effect of the Statute of Frauds in such cases, and

40—143 Ill.

may at once enter upon a consideration of the controverted questions.

Counsel insist that upon either of two grounds, under the bill and evidence in support of it, appellant was entitled to the relief prayed : First, that there was a partnership formed between appellant and Benjamin V. Page, and the lands in controversy were partnership assets, and the title being in Page, he held one-half of the premises in trust for appellant ; and second, that a resulting trust arose in favor of Furber to a moiety of the land upon the title vesting in Page. And, as it is said, appellant not being chargeable with *laches*, and the defense interposed by the subsequent purchaser, Mrs. Page, of purchase for value and without notice having failed, a decree should have been rendered in his favor finding him entitled to one half the premises, and otherwise decreeing as prayed in and by his bill.

*First*—That a partnership relation existed is denied, and the burthen was cast upon appellant of proving its existence. It is conceded that the parties were not partners prior to the purchase of this land, and that if the effect of what was done in respect thereof constituted them partners, it related only to the purchase of the land and the erection of the buildings thereon. It is clear, therefore, that the principles applicable to cases where land is purchased with partnership funds of an existing concern, or where property has been purchased for the use of the firm in connection with the business, and the title taken in the name of a single member of the firm, can have no application in this case. If entered into at all, the sole purpose of the partnership was the purchase of this single tract of land, —one hundred and twenty-three feet on Lincoln avenue, Chicago,—and the erection of five dwellings and one store-room thereon. From this, the presumption that they were partners does not necessarily arise. The transaction being equally consistent with the relation of tenants in common in the property, they may or may not be held to be partners, depending, as

between themselves, upon their intention, legally ascertained. *Neihoff* v. *Dudley*, 40 Ill. 406; *Stevens* v. *Faucet*, 24 id. 483; *Chaftraux* v. *Lafitte*, 30 La. Ann. 631; *Wright* v. *Taylor*, 9 Wend. 538; *Noyes* v. *Cushman*, 25 Vt. 390; *Sikes* v. *Works*, 6 Gray, 433.

Waiving then, for the moment, the question whether a partnership in land, as such, can be shown by parol, when the purpose and effect is to establish thereby an interest in the land and raise a trust therein for the benefit of one alleged to be a partner, that we may determine whether that relation in fact existed we will find the material facts, so far as they bear upon that question, substantially as alleged in complainant's bill. Briefly stated, the appellant, an architect, had in contemplation the purchase of the tract of land in question, and had made plans for the buildings to be erected thereon, if he purchased. He called the attention of Page, who was then supposed to be financially strong, to the land, and exhibited to him his plans and scheme. Page thought it a desirable enterprise, and expressed a desire "to get in to it" with appellant. Thereupon appellant contracted for the land for something less than $4000,—$700 to be in cash, and encumbrances assumed for the balance. One hundred dollars was to be paid down, ten dollars of which appellant then paid. Subsequently, but apparently on the same day, he got the balance of the $100 of Page and paid it on the contract of purchase. It was, after some negotiation, agreed between them that the title to the land should be taken in Page's name, and that he should procure a loan, of as large an amount as could be borrowed on the property, with which to pay for the land and erect the houses thereon in accordance with the plans, etc., prepared by appellant; that appellant should put in no money, but should devote his services, in the erection of said buildings, as architect and superintendent; that if the money to be borrowed on the land was insufficient to complete the buildings, Page was to furnish the balance, as an off-set to the services of appel-

lant. Page was to hold the title for them jointly, until the buildings were completed, and then convey the undivided one-half thereof to appellant. It would seem that preliminary to the making of the final agreement it had been ascertained that Page could borrow on the security $9400, for the bill, in alleging the proposition of Page, which was accepted by appellant, alleges the agreement to have been "that the real estate should belong to complainant and Page jointly, subject to the payment of the incumbrance of $9400, and that Page should then convey to Furber (appellant) an undivided one half, subject to said incumbrance," and the testimony of appellant is substantially to the same effect. Immediately upon the agreement being entered into, or shortly thereafter, Page borrowed on the security of this land $9400, which, it is conceded, was applied to the payment of the purchase price of the land and toward the erection of the buildings thereon. It also appears that he procured an additional loan of $4500 thereon, which was, in the main, likewise so used, but this latter is not important to be considered in this connection. In a former bill, filed in 1882, and subsequently dismissed, appellant gave substantially the same version of the transaction.

We think it apparent, from the language employed and the terms of the agreement, that the parties had in contemplation a several holding of independent interests in the property. "Tenants in common hold undivided portions of the property by several titles or in several rights, although by one title; they take by distinct moieties or parts, and have no entirety of interests." On the other hand, partners, unless otherwise provided for in their contract of partnership, are joint owners and possessors of all the capital, stock, funds and effects belonging to the partnership, whether belonging to it at the time of its formation or subsequently acquired, and "there is an entire community of right and interest therein between them. Each has a concurrent title in the whole," in respect of which each partner acts for the firm,—as principal, representing

himself, and as agent for his partnership. (Story on Partnership, secs. 89-91.) And it is out of this peculiar relation alone that the trust in land, the title to which is in one partner, arises in favor of the other partner. The parties contemplating this "joint" enterprise placed the title in Page, then reputed to be wealthy, presumably for the reason that he would be able to make a more advantageous loan than could appellant, and that being done, he was to hold the title for them "jointly" until the completion of the buildings, and then convey to appellant his moiety. It is true, that in giving his testimony appellant used the terms "partner" and "partnership," when speaking of Page and of the effect of the transaction. But this is unimportant, for the reason that whether they were partners, and the relation of partnership existed, is a question of law, to be determined from the contract of the parties, viewed in the light of the attending facts and circumstances.

In view of this contention, it may be the subject of remark that there is a total failure, both in the bill of appellant filed in 1882 and in this bill, to allege a partnership, or in any way allude to the fact that they were partners. On the other hand, the contract and conduct of the parties throughout are consistent with the intention to assume the duties and obligations of joint owners as tenants in common only, and in consummation of this intention they expressly provided for the vesting of a moiety of the title in severalty in each, subject only to the encumbrance placed upon the property for their joint benefit. That such would have been the effect of a conveyance, according to the terms of the contract, uncontrolled by evidence of a different intention, will be conceded. No other or inconsistent intention is proved, and we are of opinion that appellant has failed to establish that a partnership existed between himself and Page whereby a trust could arise in his behalf in the premises in controversy, and that the circuit court did not err in sustaining exceptions to the report of the master in that regard. This finding precludes discussion of

the question before suggested; whether, when the question arises *inter se*, the attempt thus to establish an interest in land by parol proof of partnership is not within the Statute of Frauds.

*Second*—Did a trust arise in favor of appellant, by implication of law, in any part of the premises in question? If such trust resulted, it must have arisen *eo instanti* with the vesting of title in Page. It is well established that no parol agreement, and no payments, whenever made, will create a resulting trust, "unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself." (2 Perry on Trusts, sec. 133; *Reed* v. *Reed*, 135 Ill. 482.) So while a parol agreement will not aid or extend the trust, it will not prevent a trust resulting, if the facts are present that produce the implication of law from which it arises. *Smith* v. *Smith*, 85 Ill. 189; *Wallace* v. *Carpenter*, id. 590; *Williams* v. *Brown*, 14 id. 202.

When the trust is claimed to have resulted because the consideration for the purchase of land has been paid by one and the title taken in another, it must be clearly shown that the money of the *cestui que trust* entered into the consideration for the purchase, and if the trust is asserted to attach to less than the whole, it must appear that the sum contributed was for some aliquot share or part of the estate. General contribution toward the purchase is not sufficient, but the party claiming the resulting trust must show that he paid, or incurred an absolute obligation to pay, some specific sum for some distinct interest in or aliquot part of the premises purchased. (Cases *supra;* 2 Pomeroy's Eq. 1037; Perry on Trusts, sec. 132.) So that while the trust results from the acts of the parties, and not by contract, it is apt to say that it arises from the acts, accompanied by proof of the intention in making the payment, which may be shown by proof of the agreement under which it is made. (Ibid. sec. 134.) And the rule is uniform, that in all cases where a resulting trust is sought to be established

and enforced, the trust must be clearly alleged, and the facts set forth out of which the trust is claimed to arise must be proved with clearness and certainty. (Ibid. 137, and cases cited; *Clarke* v. *Quackenbos*, 27 Ill. 260.)

The application of these general rules to the case at bar will relieve it of any considerable difficulty. The principle upon which the rule is based is, that the beneficial estate fol-. lows the consideration and attaches to the party from whom it comes, and is founded in the natural presumption that he who supplies the purchase money intends the purchase for his own benefit and not for a stranger, and that the conveyance is taken as a matter of convenience to the purchaser. (Pomeroy's Eq. sec. 1037, *et seq.*; Perry on Trusts, secs. 124-126.) It attaches because the party claiming the beneficial interest has actually paid the consideration from his own funds, or from funds for which he is absolutely liable. If he had paid nothing forming part of the transaction of purchase through or by means of which the title became vested, no trust can arise.

The entire consideration of the purchase of the land was paid from the money borrowed by Page. If it could be held as clearly and certainly proved that appellant paid the $100 earnest money when the contract of purchase was taken, it was paid with the understanding that it was to be repaid by Page, which was done. By the agreement, appellant was to pay nothing in the enterprise from his own funds, and while it does not clearly and satisfactorily appear that he paid the $100 from his own money, yet if he did, it was with the understanding before mentioned, and was in fact and in equity a payment by Page. That Page repaid himself out of the loan secured by him upon the property is immaterial. It was expressly agreed that the loan secured should be expended in payment for the land and the erection of buildings thereon. Nor can the money derived by Page by means of the loan of $9400, secured by a lien on the property, be regarded as money

of appellant.　Page alone, beyond the security the property afforded, was responsible for its repayment.　There was no contract, expressed or implied, by which appellant was bound to repay the money to the lender or to Page.　True, he agreed to take his interest in the property subject to the lien of the mortgage given to secure said loan; but he could have abandoned the enterprise at will, without incurring liability for the loan.　The case is clearly distinguishable from that class of cases where the lender of money for the purchase of land takes title in his own name as security for its payment, or does so upon the credit or account of another, but with the understanding that he is to be repaid.　In such cases the money is treated as the money of the borrower, who is under obligation to repay it, and a trust is created.　*Page* v. *Page,* 8 N. H. 187; *Runnels* v. *Jackson,* 1 Hon. (Miss.) 358; *Kelly* v. *Johnson,* 28 Mo. 249.

Appellant did not pay, nor was he under obligation to pay, as that expression is used in the books, any money which entered into the original purchase, by and through which the title vested in Page, or in the subsequent improvement of the property.　He, by the stipulation, was to pay nothing.　The rule is, as substantially before stated, that "there must be actual payment from a man's own money, or what is equivalent to payment from his own money, to create a resulting trust."　Perry on Trusts, sec. 133, and cases cited.　While it is true Page was to expend the money derived from mortgaging the premises, in payment for the land and in the buildings to be erected thereon, the equities of appellant grew out of the contract, alone.　The money was Page's money, subject only to the express trust created by the contract of the parties as to the mode of its expenditure for their joint benefit.

Nor can the agreement of appellant to devote his services as architect and superintendent in the erection of the buildings contemplated by the parties be held to create a resulting trust in his favor.　It is clear that, as between these parties

and the former owner of the land, it formed no part of the consideration for its purchase, and if the trust arose immediately upon the vesting of the title, or not at all, its subsequent performance by appellant could not be effective to produce that result. It might be, and undoubtedly was, consideration moving to Page, to induce him to enter upon the enterprise and to cause him to assume the express trust shown by the evidence; but the implication of law does not arise thereon from which a trust results. Moreover, if, because such services entered into the cost of the buildings subsequently erected, it could be held that such investment of the equivalent of appellant's money formed part of the consideration, so that a beneficial interest would attach in appellant, to what aliquot part shall it apply? There is some discrepancy in the statement of the cost of the land and buildings, but accepting appellant's figures, they cost between $13,000 and $14,000, exclusive of interest paid. This sum, and perhaps a small amount in excess, was raised by Page by means of loans, secured upon this property. For the repayment of these loans Page was personally obligated, and whatever right appellant was to have, was, as we have seen, subject to at least $9400 thereof. It seems these loans have been paid, which is perhaps unimportant, by Page, or those claiming under him.

Now, if contended, which it is not, that a resulting trust was created in an aliquot part of the land in proportion as the value of such services so entering into the cost of the buildings bears to the total money expended, we should meet with the difficulty that they were not performed or .paid as the equivalent of money for any such part or share. That such share, part or portion was in contemplation of the parties, is clearly refuted by the evidence. Then, again, the bill, neither in its frame or prayer, contemplated such division, nor are there allegations upon which such finding could be predicated. The bill proceeds for a moiety of the property under the agreement to convey. It is likewise manifest, that

where the evidence shows the proportions in which the fund has been contributed, the equity will attach, if at all, only in such proportion, and while, as we have seen, the intention of parties may be shown, both as the purpose with which the money was paid by one and title taken in another and also to show that the person paying the money paid a specific sum for some distinct interest in or aliquot part of the estate, yet as resulting trusts never rest in contract, the trust can not be extended by agreement. If appellant contributed one-tenth, only, the parol agreement between the parties could not have the effect of extending the trust thereby arising to one-half of the estate. To give it that effect would be to create the trust by parol contract, and enforce it as to four-tenths of the land.

We need not extend this opinion by discussion showing that the agreement, resting in parol, is void, as being within the Statute of Frauds. It follows, therefore, that we are of opinion that the court did not err in sustaining exceptions to the master's report in this respect, and in entering a decree dismissing the bill.                    *Decree affirmed.*

, Mr. JUSTICE WILKIN : I do not concur in this opinion.